NO. 07-10-00008-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

OCTOBER 5, 2010

JAVIER YEBRA, APPELLANT

v.

THE STATE OF TEXAS, APPELLEE

FROM THE 69TH DISTRICT COURT OF MOORE COUNTY;

NO. 4249; HONORABLE RON ENNS, JUDGE

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

**MEMORANDUM OPINION**

A Moore County jury found appellant, Javier Yebra, guilty of aggravated assault with a deadly weapon[1] and assessed a fifty-year sentence of incarceration. He appeals his conviction contending that the evidence was factually insufficient to support a finding that he used a deadly weapon and that he acted with the requisite intent. He also maintains that the State's pretrial amendment of the indictment was impermissible. We will affirm.

---

[1] TEX. PENAL CODE ANN. §§ 22.01(a)(1), 22.02(a)(2) (Vernon Supp. 2009).

Factual and Procedural History

Complainant, Darlene Flores, went with her roommate, Rosa Aguirre, to a bar in Cactus, Texas. While there, Flores met appellant. Flores bought him a beer, and the two played pool. During their interaction, appellant told her that if she "did him wrong that he had a knife." Flores and Aguirre left the bar at about 2:00 a.m. Though uninvited and unbeknownst, appellant followed them.

At this point, the details regarding the sequence of the night's events vary somewhat among the witnesses. Flores recalled going to her room to change clothes. Appellant, after having somehow gained entry to the house, tried to get into her room. Flores slammed the door to prevent him from doing so, changed clothes, and then went outside to talk to him. Appellant accused Flores of having stolen CDs from him. Appellant then attacked Flores. Flores remembered being on the ground as appellant was kicking and punching her. Flores had fallen to the ground near some beer bottles and picked up a number of these bottles and threw them at appellant. She also hit him in the head with a bottle as he continued hitting her. She got to her feet and ran around the car toward the house. She tried to get inside but Aguirre would not open the door because appellant had tried to punch her as well.

According to Flores, appellant again violently approached her. Flores presumed that it was during this stage of the altercation that appellant stabbed her although she was unaware of her stab wounds until later when she was inside receiving medical care from paramedics. Flores did not see a knife during any stage of the altercation. She testified that, as a result of the wounds, she had to go to the hospital. She testified that

2

she underwent surgery and that once, during her approximately three-week stay in the hospital, she was transferred to ICU after she had stopped breathing. Flores admitted to having drunk a great deal that night and that her recollection of the night came only in "bits and pieces."

Aguirre testified that after she and Flores returned home, Flores and appellant left together in appellant's car, perhaps to search for more beer, and were gone for 30 to 45 minutes. When they returned, appellant came into the house but Aguirre directed him to go outside. He complied and waited outside for Flores for a little while then came back in the house and tried to get in the bedroom. Aguirre again told him to leave the house. Appellant went back outside and waited on the porch to talk to Flores.

Flores joined him while Aguirre remained inside. Aguirre heard Flores and appellant arguing. She looked outside and saw appellant punching Flores by the front door; she did not see him stab her. Aguirre moved to go out and assist Flores but was denied exit by appellant deliberately pushing the door closed. Appellant also tried to punch Aguirre, causing damage to the screen door. She explained that only appellant and Flores were outside the house that night. Appellant eventually left, and Aguirre helped Flores inside and noticed that she was bleeding "bad."

Appellant was charged with aggravated assault with a deadly weapon. On September 21, 2009, over two and a half months before trial began, the trial court granted the State's motion to amend the indictment. The two-day trial began on December 8. At trial, Flores and Aguirre provided their foregoing accounts of the night. Aguirre's fifteen-year-old twin children both testified that only appellant and Flores were

3

outside that night. Neither saw appellant stab Flores. The responding officer testified that a brief search of the scene yielded no knife, and no knife was found on appellant.

No one disputes that there was an altercation between appellant and Flores. Likewise, it is undisputed that Flores sustained serious wounds that night. According to Dr. Thomas Parsons, a forensic pathologist who examined photographs of the wounds and a medical report of a CT scan, the wounds "were most likely caused by a knife or knife-like object." He described the wound characteristics that led him to that conclusion and explained the risks posed by the fact that Flores's liver was lacerated.

Appellant did not testify. In his defense, he recalled Aguirre's daughter who testified that, before Flores went outside to talk to appellant, Flores said to her boyfriend on the phone that she was going outside to "kick his A."

On December 9, the jury returned its guilty verdict. Appellant timely appealed and brings to this Court two issues. In his first issue, he challenges the factual sufficiency of the evidence. He focuses on the evidence to prove that he used a deadly weapon but also challenges the element of intent. In his second issue, he contends the pretrial amendment of the indictment was impermissible as one that prejudiced his substantial rights by impairing his ability to prepare his defense.

Factual Sufficiency of the Evidence

Standard of Review

We begin our factual sufficiency review under the assumption that the evidence is legally sufficient. Laster v. State, 275 S.W.3d 512, 518 (Tex.Crim.App. 2009). In a

factual sufficiency review, we view all of the evidence in a neutral light to determine whether the jury's verdict of guilt was rationally justified. See Watson v. State, 204 S.W.3d 404, 415 (Tex.Crim.App. 2006). We give deference to the trier of fact's determination if supported by evidence and may not order a new trial simply because we may disagree with the verdict. Id. at 417. We may reverse for factual insufficiency only when there is some objective basis in the record that demonstrates that either (1) the evidence supporting the verdict is so weak that the verdict seems clearly wrong and manifestly unjust, or (2) the great weight and preponderance of the evidence contradicts the jury's verdict. See Laster, 275 S.W.3d at 518. An appellate opinion addressing factual sufficiency must include a discussion of the most important evidence that appellant claims undermines the jury's verdict. Simms v. State, 99 S.W.3d 600, 603 (Tex.Crim.App. 2003). When a defendant's version of the facts conflicts with other evidence, it is the jury's prerogative to judge the credibility of the evidence and to ascribe the weight to be given to the evidence. See Jones v. State, 944 S.W.2d 642, 648–49 (Tex.Crim.App. 1996).

Deadly weapon finding

Appellant maintains that Flores's wounds could have been inflicted accidentally or by a third party, though no third party was identified. Appellant relies on the following evidence or lack of evidence to support his contention that the evidence is factually insufficient to support the deadly weapon finding: (1) no testimony that appellant was seen in possession of a knife, (2) no knife recovered from scene or from appellant, (3) no testimony from witnesses that anyone saw appellant stab Flores, (4) witness

5

testimony limited to seeing appellant punch or hit Flores, (5) Flores's lack of recollection of being stabbed, (6) inconsistencies between Flores's testimony and statement to police, (7) evidence of broken beer bottles on the ground during admitted altercation in which Flores was on the ground, and (8) the fact that witnesses to the altercation never went outside to see if another person was present.

Based on the "possibilities" posed by the evidence,[2] appellant urges this Court to find the evidence factually insufficient. While we do note that the state of the evidence is such that a number of things *could* have happened that night, we are not charged with determining the plausibility of alternate theories. While the existence of other reasonable hypotheses may be relevant to our review of the factual sufficiency of the evidence, it is not determinative. See Wilson v. State, 7 S.W.3d 136, 141 (Tex.Crim.App. 1999). In fact, we "may not find the evidence to be factually insufficient merely because there are 'reasonably equal competing theories of causation.'" Steadman v. State, 280 S.W.3d 242, 247 (Tex.Crim.App. 2009) (quoting Goodman v. State, 66 S.W.3d 283, 287 (Tex.Crim.App. 2001)). The evidence cited by appellant as supporting alternative theories of how Flores sustained her injuries do not form an objective basis demonstrating that the great weight and preponderance of the evidence contradicts the jury's verdict. See Laster, 275 S.W.3d at 518.

Turning now to our review of the evidence supporting the State's allegations rather than alternative theories, we note that the State need not introduce the object into

---

[2] To the extent that appellant advances his argument in the "reasonable alternative hypothesis" paradigm, we note that such construct was overruled in Geesa v. State, 820 S.W.2d 154, 161 (Tex.Crim.App. 1991).

evidence for the trier of fact to find that such object was a deadly weapon. See Morales v. State, 633 S.W.2d 866 (Tex.Crim.App. 1982). Even without a description of the weapon, the victim's injuries can, by themselves, be a sufficient basis for inferring that an appellant used a deadly weapon. See Tucker v. State, 274 S.W.3d 688, 691–92 (Tex.Crim.App. 2008); see also Morales, 633 S.W.2d at 868–69 (photograph of deep slash requiring stitches and running from below victim's earlobe across her cheek to the corner of her mouth was sufficient to show that a deadly weapon was used).

Here, there is evidence that Flores suffered five stab wounds that required surgery and a three-week stay in the hospital. At one point, she was transferred to ICU when she stopped breathing. Further, Dr. Parsons, an experienced forensic pathologist, testified that he examined photographs of the wounds and a medical report of a CT scan performed on Flores. In his opinion and based on his review of the photographs and medical report, Flores's wounds "were most likely caused by a knife or knife-like object." He detailed how the elasticity of the skin generally causes such wounds to have the "bowed" appearance visible in the photographs. He testified, too, that the wounds displayed characteristics of having been inflicted by an object having one sharp edge. He also explained how the linear cuts on the shirt Flores was wearing were also consistent with having been caused by a knife or knife-like object. He testified that Flores's injuries could have caused death. One of the wounds lacerated her liver, which required surgery and posed a serious risk of severe blood loss and infection within the abdominal wall.

When presented with the theory that a broken bottle caused Flores's injuries, Parsons responded that injuries inflicted by broken bottles "typically have a fairly pronounced arc of circumference" not present in Flores's wounds. While he acknowledged that it was theoretically possible that the wounds were inflicted by a piece of a bottle, if a very specifically-shaped shard of glass was used, Parsons generally discounted the theory. Though there was no evidence identifying the instrument or object used, Parsons specifically testified that a "deadly weapon" caused Flores's injuries. See Tucker, 274 S.W.3d at 692. So, based on Flores's account of her injuries, medical records, photographs depicting her wounds and blood loss, and expert medical testimony regarding the nature and source of the wounds, the jury could have reasonably found that appellant used a deadly weapon.

The absence of evidence specifically identifying or describing the weapon used does not render the foregoing evidence of a deadly weapon so weak that the verdict is clearly wrong or manifestly unjust. See Laster, 275 S.W.3d at 518. The evidence supporting the deadly weapon finding is factually sufficient. We overrule this issue.

Intent

In a less-developed contention, appellant maintains that the evidence is insufficient to show that he acted with the requisite intent. It is an offense to intentionally, knowingly, or recklessly cause injury to another. TEX. PENAL CODE ANN. § 22.01(a)(1). Again, appellant points to the possibility that Flores's wounds were inflicted accidentally or by a third party. The State has not specifically addressed the contentions regarding intent by brief or by oral argument.

8

The only evidence of appellant's intent, he argues, are Flores's wounds. However, there is also evidence that the two were arguing and cursing outside before the altercation and that appellant hit and punched Flores and chased her around the car. Further, Flores testified that appellant accused her of stealing from him. Intent may be inferred from the circumstances surrounding the act. See Guevara v. State, 152 S.W.3d 45, 50 (Tex.Crim.App. 2004). Factually sufficient evidence supports the finding that appellant acted with the requisite intent. We overrule this issue.

## Amendment of Indictment

The indictment originally charged that appellant used a "deadly weapon, to wit: a knife." Over two and a half months before trial and over objection, the trial court allowed the State to amend the indictment to allege that appellant used a "deadly weapon, to wit: a knife or some unknown object." Citing Flowers v. State, 815 S.W.2d 724, 729 (Tex.Crim.App. 1991), appellant argues that the amendment prejudiced his substantial rights by impairing his ability to present a defense to the deadly weapon allegations.

### Applicable Law and Standard of Review

Article 28.10 governs the amendment of an indictment and provides that, "after notice to the defendant, a matter of form or substance in an indictment or information may be amended at any time before the date the trial on the merits commences." TEX. CODE CRIM. PROC. ANN. art. 28.10(a) (Vernon 2006). However, "[a]n indictment or information may not be amended over the defendant's objection as to form or substance if the amended indictment or information charges the defendant with an additional or

different offense[3] or if the substantial rights of the defendant are prejudiced." Id. art. 28.10(c). In Flowers, the Texas Court of Criminal Appeals determined that a review of the entire record is appropriate to determine whether an amendment was prejudicial under the "substantial rights" provision of article 28.10(c). 815 S.W.2d at 729. Based on appellant's position, then, we review the record to determine whether the pretrial amendment impaired his ability to prepare his defense.

Discussion

Appellant incorporates his factual insufficiency points to support his contention that the amendment was prejudicial to his substantial rights. Appellant adds that the amendment "substantively altered the nature of the weapon that was allegedly used so that, in essence, any object could qualify in this case as a 'deadly weapon.'"

As we have concluded, the evidence at trial was factually sufficient to support the deadly weapon finding. And nothing in the record seems to suggest the amendment impaired appellant's ability to prepare a defense. His defense centered on testimonial inconsistencies and evidentiary gaps leaving open the possibilities that Flores was stabbed accidentally or by a third party. The amendment arguably drew attention to the fact that the State was not certain of the precise nature of the object used.

Nor did it have to be; again, the State need not introduce the object used as a deadly weapon. See Tucker, 274 S.W.3d at 691–92. Further, the amendment did not appear to alter the State's theory although it could be said to broaden or alter the scope

---

[3] A different offense, as contemplated by article 28.10(c), means a different statutory offense. Flowers, 815 S.W.2d at 727. Appellant does not specifically challenge the amendment in terms of charging an additional or different offense.

of evidence available to prove appellant's use of a deadly weapon.  With respect to the scope of evidence, we return to Flowers:

> Changing an element, such as the name of the owner, changes the evidence needed to prove the offense.  If such amendment is made on the basis of the same incident upon which the original indictment is based, it will, in most cases, be permissible under the substantial rights provision [of article 28.10(c)] after a review of the record for prejudice.

815 S.W.2d at 729.  Here, the amendment related to the same incident forming the basis of the original indictment.  Appellant's defense focusing on the fact that no one ever saw a knife and urging the possibility that the injuries could have been caused by beer bottles or an unidentified third party, it seems, would have remained the same regardless of the amendment.[4]  Further, the jury was charged on the applicable statutory definition of "deadly weapon."  See TEX. PENAL CODE ANN. § 1.07(a)(17)(B) (Vernon Supp. 2009).  Finally, we note that appellant had approximately two and one-half months' notice of the amendment, a total of seventy-eight days.  The pretrial amendment did not violate article 28.10(c) by prejudicing appellant's substantial rights.  We overrule appellant's second issue.

---

[4] The amended language "or some unknown object" actually appears twice in the indictment.  Following the amendment, the indictment alleged that appellant

> intentionally, knowingly, or recklessly cause[d] bodily injury to [ ] Flores by cutting or stabbing the said [ ] Flores with a knife or some unknown object and the Defendant did then and there use or exhibit a deadly weapon, to-wit: a knife or some unknown object, during the commission of said assault.

So, when the amended indictment is read in its entirety, the amendment becomes less broad in that the State must still prove that the object, even if unknown, cut or stabbed Flores.  That is, the scope of the evidence available to prove use of a deadly weapon is not as wide as it might, at first glance, appear.  With that in mind, it would appear that appellant's defensive theory would have to change little to address the amendment.

## Conclusion

Having overruled appellant's issues, we affirm the judgment of the trial court.


Mackey K. Hancock
Justice

Do not publish.